UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 22-0054-DCR |
| V. | ) ) | |
| COTY JAMES HELTON, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Coty Helton has filed a motion to suppress evidence supporting the charges in the Indictment, arguing a warrantless traffic stop and subsequent vehicle search occurring November 25, 2021, violated his Fourth Amendment rights. [Record No. 19] The motion was referred to United States Magistrate Judge Matthew A. Stinnett for issuance of a Report and Recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1)(B). Following an evidentiary hearing, Magistrate Judge Stinnett issued his R & R, recommending that Helton's motion be denied because officers had reasonable suspicion of criminal activity to support the stop and search. [Record No. 24] Helton objected, arguing that officers lacked reasonable suspicion of narcotics activity to initiate a traffic stop and subsequent detention.[1] [Record No. 26] The United States also objected, contending officers had both reasonable suspicion of an ongoing

---

[1] Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

crime and probable cause of a civil infraction. [Record No. 27] Following careful review of the matter, the Court will deny the motion to suppress.

I.

In an effort receive a reduced criminal charge or penalty, a confidential informant ("CI") told Officer Troy Willard that Helton would be driving a white vehicle from Lexington, Kentucky to Lancaster, Kentucky on the evening of November 24, 2021, carrying a large quantity of narcotics. [Record No. 25, p. 8-11] The CI further indicated that Helton would arrive at the only McDonald's restaurant in Lancaster and that Helton normally kept narcotics in a backpack and safe. [*Id.*, p. 10-11] After a background check revealed that Helton had a suspended driver's license, Willard and other officers drove to the area of the McDonald's restaurant. [*Id.*, p.11-12] Helton did not arrive at the originally anticipated time, but the CI frequently updated Willard with Helton's location. [*Id.*, p. 12-13]

At approximately 4:14 a.m. on November 25, a white truck entered the area from a road connecting Lexington and Lancaster. [*Id.*, p. 20-22] The McDonald's restaurant was closed, and Willard did not see any other vehicles. [*Id.*, p. 21-22] After confirming with the CI *via* text message that Helton was driving a white truck, Willard approached the vehicle head-on, identifying Helton as the driver. [*Id.*, p. 24-26] Willard activated his police lights, immediately removed Helton from the vehicle, and placed him on the ground. Another officer conducted a "safety pat down on [Helton]" and found $1,306 in cash. [*Id.*, p. 27-28] Willard then utilized a police canine sniff around the exterior of the vehicle, which alerted him to the presence of narcotics. [*Id.*, p. 28] Police searched the vehicle and found methamphetamine, fentanyl, four firearms, and assorted ammunition. [Record No. 25, p. 29-30]

## II.

The United States contends that officers had reasonable suspicion of narcotics activity to conduct a traffic stop or, in the alternative, probable cause based on Helton's suspended driver's license. [Record No. 26] The magistrate judge found reasonable suspicion but rejected the United States' alternative argument because Willard testified that he pursued Helton for suspected narcotics activity, and not because of his suspended license. [Record No. 24, p. 10-11] Helton objected to the magistrate judge's finding of reasonable suspicion. [Record No. 27]

The Sixth Circuit has developed two distinct tests to ascertain whether a vehicle stop is constitutional. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). "[A]n officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). "'[R]easonable suspicion' is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000). But the officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In assessing whether reasonable suspicion exists, the reviewing court considers the totality of the circumstances. *See Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Helton argues that the "information provided by the confidential informant, together with Officer Willard's personal observations," is not enough to support a finding of reasonable suspicion. [Record No. 27] Specifically, he asserts that the United States did not provide

sufficient evidence to establish the CI's reliability. [*Id.*, p. 2] Helton points out that: (1) Willard had not previously utilized this CI to initiate an arrest; and (2) the CI was not present at the time of the stop. Helton also contends that Willard lacked proper independent corroboration of the CI's information. [*Id.*, p. 3]

"[W]hen part of the reasonable-suspicion equation includes a tip from an informant, the weight to which that tip is entitled falls along a broad spectrum." *United States v. Williams*, 483 F. App'x 21, 25 (6th Cir. 2012). "[T]ips from anonymous informants are generally entitled to little weight because they provide slim, if any, opportunity to assess the reliability and credibility of the individual providing the information." [*Id.*] However, "tips from known or reliable informants are generally entitled to substantially more weight." [*Id.*] When an informant's tip provides predictive or specific information, it is considered more reliable "because it demonstrate[s] inside information—a special familiarity with respondent's affairs" that the general public would not know. *Alabama v. White*, 496 U.S. 325, 332 (1990). Further, an informant "whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated," is considered to be more reliable. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (citing *Adams v. Williams*, 407 U.S. 143, 146-47 (1972)).

Here, approximately three days before the traffic stop, Willard arrested the CI, who offered information in an attempt to reduce charges or lessen the potential penalty in his matter. The CI, therefore, was known to Willard and "risk[ed] being held accountable for false information." *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011); *see also United States v. Romain*, 393 F.3d 63, 73 (6th Cir. 2004) (In-person communications also tend to be more reliable because, having revealed one's physical appearance and location, the informant knows that she can be tracked down and held accountable if her assertions prove inaccurate."). The

- 4 -

CI also offered predictive and specific information, including: (1) the type and color of the vehicle Helton would be driving; (2) the road and direction Helton would be traveling; and (3) an updated estimated time of arrival. By accurately predicting Helton's future behavior, the CI "demonstrated 'a special familiarity with respondent's affairs,' which in turn implied that the tipster had 'access to reliable information about that individual's illegal activities.'" *Navarette v. California*, 572 U.S. 393, 398 (2014) (quoting *White*, 496 U.S. at 332); *see also United States v. Keeling*, 783 F. App'x 517, 521 (6th Cir. 2019) (acknowledging that subsequent corroboration of an informant's tip supports reliability).

Helton was also driving "during the early morning hours of Thanksgiving Day in a high crime area." [Record No. 27] An individual's presence in an area of expected criminal activity, although not conclusive, tends to further support a finding of reasonable suspicion. *See United States v. Harris*, 192 F.3d 580, 584 (6th Cir.1999) (holding officer's observation of individual walking erratically in an area known for frequent drug sales sufficient for reasonable suspicion); *United States v. Anderson*, 923 F.2d 450, 456 (6th Cir.1991) (stating that a large number of recent robberies in neighborhood contributed to reasonable suspicion sufficient to stop overloaded automobile). Additionally, "time of day 'is relevant without being independently dispositive'" of reasonable suspicion. *United States v. Pacheo*, 841 F.3d 384, 394 (6th Cir. 2016) (quoting *Hoover v. Walsh*, 682 F.3d 481, 495 (6th Cir. 2012)). Helton was located in a high crime area at approximately 4:14 a.m. on Thanksgiving morning and the McDonald's restaurant was closed, which tends to support reasonable suspicion. *See United States v. Betts*, 806 F. App'x 426, 430 (6th Cir. 2020) (discussing how a defendant's presence in a high crime area late at night when all adjacent businesses are closed is a contextual consideration relevant to the reasonable suspicion analysis).

## III.

After carefully considering the totality of the circumstances, this Court finds that officers had reasonable suspicion of drug activity. Because the officers' traffic stop was supported by reasonable suspicion, it is not necessary to consider the government's alternative argument based on probable cause to believe that a civil infraction had occurred.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. United States Magistrate Judge Matthew A. Stinnett's Report and Recommendation [Record No. 24] is **ADOPTED IN PART** and **INCORPORATED** here by reference.

2. Defendant Helton's objections to the Report and Recommendation [Record No. 27] are **OVERRULED** and his motion to suppress [Record No. 19] is **DENIED**.

3. The United States' objections to the Report and Recommendation [Record No. 26] are **OVERRULED** as moot.

Dated: September 21, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky